IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 10-159-02 |
| STEPAN BOTSVYNYUK<br>a/k/a "Milo" | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorneys, Zane David Memeger, United States Attorney in and for the Eastern District of Pennsylvania, and Daniel A. Vélez and Randall P. Hsia, Assistant United States Attorneys for this district, submits the government's objections to the Presentence Report, dated December 7, 2011, pursuant to the Court's May 23, 2012, Order.

I.      BACKGROUND

Defendant's Omelyan Botsvynyuk and Stepan Botsvynyuk were convicted on October 12, 2012, after a jury trial of conspiracy to violate RICO, in violation of 18 U.S.C. § 1962(d) (Count One).  Omelyan Botsvynyuk was also convicted of one count of extortion, in violation of 18 U.S.C. § 1951 (Count Two).  Stepan Botsvynyuk was acquitted of one count of extortion (Count Four).  Count Three of the indictment charging extortion was dismissed upon the government's motion after trial.  Count One of the indictment, charging conspiracy to violate RICO, identified several predicate offenses: a) peonage, in violation of 18 U.S.C. § 1581; b) involuntary servitude, in violation of 18 U.S.C. § 1584; c) extortion and attempted extortion, in violation of 18 U.S.C. § 1951; d) and several immigration offenses in violation of 8 U.S.C. §

1324, including bringing in, transporting and harboring illegal aliens for purposes of financial gain. At trial, the government presented the testimony of nine victims of the trafficking offenses.

II.     PRESENTENCE REPORT

The government submits that the probation office used the correct methodology in calculating the applicable guidelines for the defendants. Specifically, the probation officer correctly addressed each victim of the peonage and involuntary servitude as a separate offense of the conspiracy in calculating the guidelines.

Count One charges conspiracy to violate RICO. The applicable guideline is section 2E1.1(a)(1), which sets a base offense level of 19. However, under 2E1.1(a)(2), the base offense level for a RICO count is the greater of 19 or "the offense level applicable to the underlying racketeering activity." Section 2E1.1 notes 1 and 2, instructs that each underlying offense shall be treated as a separate count of conviction. After each predicate offense is calculated, the offense level for the grouped charges is determined by using the highest offense level of the grouped charges and then adding a grouping adjustment. U.S.S.G. §§ 3D1.3(b), 3D1.4. In this case, the predicate offenses (underlying racketeering activities) of peonage and involuntary servitude, which allege violations against multiple identified victims, provide the greater base offense level of 22 and are governed by section 2H4.1. See, e.g., United States v. Grecco, 342 Fed.Appx. 739, 745-46 (3d Cir. 2009) (reviewing section 1B1.1 and cross-referencing under 2E1.1(a)(2) for RICO) (not precedential).

A conviction of conspiracy to violate RICO requires that each underlying predicate offense be treated individually for purposes of calculating the guidelines. 2E1.1(a)(2); see also United States v. Bertoli, 40 F.3d 1384, 1401 fn. 11 (3d Cir. 1994) (conspiracy divided into groups, citing section 3D1.2 note 8); United States v. Tocco, 200 F.3d 401, 430 (6th Cir.

2000) ("the district court must 'treat each underlying offense as if contained in a separate count of conviction of the purposes of (a)(2).'" ), citing U.S.S.G. § 2E1.1, note 1. Under Section 1B1.3, predicate acts are relevant conduct that must be considered.  United States v. Corrado (Corrado I),  227 F.3d 528, 542 (6th Cir. 2000) ("[T]he underlying acts of racketeering in a RICO conspiracy are ... simply conduct that is relevant to ... participating in a criminal enterprise.").

In this case, then, the probation office properly determined that the base offense level should be driven by the guidelines for peonage and involuntary servitude under section 2H4.1 because it provides the greater offense level.  When calculating the guidelines under 2H4.1, a conspiracy to hold persons in peonage and involuntary servitude is further determined by calculating the harm to each victim individually.  U.S.S.G. §§ 1B1.2, 3D1.2 n.8.  The guidelines instruct that in cases involving conspiracies, harm to victims are treated as separate conspiracies against each victim.  Section 1B1.2(d) specifically states: "A conviction on a count charging conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit."  See e.g., Pham v. United States, 2007 WL 542378 (D.N.J. 2007) (proper to consider five victims as representative of hundreds of victims of defendant's conspiracy to smuggle over 200 aliens into the United States from China) (not reported) . Under section 3D1.2(d), offenses falling under 2H4.1 are specifically excluded from the normal grouping rules which would otherwise group all the victims together.  In addition, application note 8 under 3D1.2 clarifies that in cases involving injury to distinct victims, "whether or not the injuries are inflicted in distinct transactions . . . each such count should be treated separately rather than grouped together."  U.S.S.G. § 3D1.2 n.8.  "Thus, where a conspiracy involves multiple victims, the defendant should be deemed to have conspired to commit an equal number of substantive

offenses, and the conspiracy count should be divided under § 3D1.2 into that same number of distinct crimes for sentencing purposes." United States v. Melchor-Zaragoza, 351 F.3d 925, 928 (9th Cir. 2003) (23 hostage victims of single conspiracy treated as separate and distinct offenses) (internal citations omitted).  See also, United States v. Egbert, 562 F.3d 1092, 1100 (10th Cir. 2009) (three victims of white-supremacist assaults identified in overt acts of single conspiracy properly calculated separately for purposes of the guidelines).  Accordingly, the probation office implemented the correct methodology in determining the guideline range under RICO conspiracy by cross-referencing to section 2H4.1 and calculating the harm to each victim.

III.     GUIDELINES CALCULATIONS

    A.     Omelyan Botsvynyuk

The government submits the following guidelines calculation for defendant Stepan Botsvynyuk.  As in the PSR, each victim will be referred to as "Group X" but the number assigned to a particular victim may not mirror the number in the PSR due to the government submitting additional victims for consideration:

| | |
|---|---|
| RICO conspiracy conviction - USSG 2E1.1 | 19 |
| Underlying Rack. Activity Cross-Reference - Peonage/Invol. Servitude - 2H4.1 | 22 |
| Group One - Victim Tara Petrunyk (Count One) | |
|     Base Offense Level, 2H4.1 | 22 |
|     Spec. Offense Charac - | |
|     - Serious physical injury, 2H4.1(b)(1)(B) | +0[1] |

---

[1] The probation office included a 2-level enhancement for serious bodily injury for Petrunyk under section 2H4.1(b)(1)(B).  However, Petrunyk's testimony established that he had only been slapped, punched and kicked very hard, but did not suffer sufficient injury to seek treatment, Tr. 9/19/11, p. 68, which does not constitute serious bodily injury.  See U.S.S.G. § 1B1.1, App. Note 1(L) ("'serious bodily injury' means injury involving extreme physical pain or the protracted impairment of a function of a bodily member or organ . . . .").

| | |
|---|---|
| - Held in peonage 180 days - 1 yr, 2H4.1(b)(3)(B) | +2[2] |
| - Other felony offense - Extortion and Immigration Offenses - 2H4.1(b)(4)(A) | +2[3] |
| Role in the Offense - 3B1.1(a) (leader/organizer) | +0 |
| **Adjusted Offense Level** | **26**[4] |

Group Two - Victim Mykhaylo Tomiyuk (Count One)[5]

| | |
|---|---|
| Base Offense Level, 2H4.1 | 22 |
| Spec. Offense Charac - | |
| - Serious physical injury, 2H4.1(b)(1)(B) | +2[6] |
| - Held in peonage over 1 year, 2H4.1(b)(3)(A) | +3[7] |
| - Other felony offense - Extortion and Immigration Offenses - 2H4.1(b)(4)(A) | +2 |
| Role in the Offense - 3B1.1(a) (leader/organizer) | +0 |
| Obstruction of Justice, 3C1.1 (false testimony) | +0 |
| **Adjusted Offense Level** | **29** |

---

[2]  The probation office added 3 levels for being held for more than one year, pursuant to 2H4.1(b)(3)(A). Petrunyk's testimony, however, was not so precise as to clearly establish a year. Petrunyk testified that he arrived in the United States in early 2001 and escaped in the spring of 2002 (approximately one year). Tr. 9/19/11, pp. 19, 62. ICE Agent Roger testified that Petrunyk was released from immigration custody in May 2001 (after Petrunyk attempted to enter the United States through Mexico). Tr. 10/04/11, pp.14-15.

[3]  See testimony of Svitlana Zaiats (Petrunyk's mother), Tr. 9/26/11.

[4]  The probation office calculated an adjusted offense level of 29.

[5]  The probation office did not calculate the guidelines as related to Tomiyuk, probably due to Tomiyuk not being identified in the indictment, and only appearing for trial testimony after he was transported from Ukraine to the United States for trial.

[6]  Tomiyuk testified he was beaten repeatedly resulting in bruises. Tr. 9.20/11, p. 120; Tr. 9/21/11, p. 6 (regarding assault with chair leg); Tr. 9/21/11, p. 8-10, 14-15 (beatings by Omelyan, Mykhaylo and Stepan Botsvynyuk). The government submits that repeated beatings constitute serious physical harm.

[7]  Tomiyuk arrived in March 2001, Tr. 9/20/11, p. 76, and escaped in August 2002. Tr. 9/21/11, pp. 16-17.

Group Three - Victim I.S. (Count One)[8]

| | |
|---|---|
| Base Offense Level, 2H4.1 | 22 |
| Spec. Offense Charac - | |
| - Serious physical injury, 2H4.1(b)(1)(B) | +2[9] |
| - Held in peonage over 1 year, 2H4.1(b)(3)(A) | +3 |
| - Other felony offense - Extortion and Immigration Offenses - 2H4.1(b)(4)(A) | +2[10] |
| Role in the Offense - 3B1.1(a) (leader/organizer) | +0 |
| Obstruction of Justice, 3C1.1 (false testimony) | +0 |
| **Adjusted Offense Level** | **29** |

Group Four - Victim M.S.1. (Counts One and Two)

| | |
|---|---|
| Base Offense Level, 2H4.1 | 22 |
| Spec. Offense Charac - | |
| - Serious physical injury, 2H4.1(b)(1)(B) | +2 |
| - Held in peonage over 1 year, 2H4.1(b)(3)(A) | +3 |
| - Other felony offense - Extortion and Immigration Offenses - 2H4.1(b)(4)(A) | +2 |
| Role in the Offense - 3B1.1(a) (leader/organizer) | +0 |
| Obstruction of Justice, 3C1.1 (false testimony) | +0 |
| **Adjusted Offense Level** | **29** |

Group Five - Victim Mykhailo Sheshur (Count One)

| | |
|---|---|
| Base Offense Level, 2H4.1 | 22 |
| Spec. Offense Charac - | |

---

[8] The probation office did not calculate the guidelines as related to I.S., probably due to I.S. not being identified in the indictment, and only appearing for trial testimony after she was transported from Ukraine to the United States for trial.

[9] There is no cross-reference from 2H4.1(b)(4)(B) to 2A3.1 for aggravated sexual abuse because the jury found codefendant Omelyan Botsvynyuk guilty of aggravated sexual abuse, not Stepan. However, as a member of the conspiracy, Stepan Botsvynyuk is responsible for the "serious bodily injury" suffered by I.S. and M.S.1. See U.S.S.G. § 1B1.1, App. Note 1(L) ("'serious bodily injury' is deemed to have occurred if the offense involved conduct constituting criminal sexual abuse under 18 U.S.C. § 2241 or § 2242 . . . .").

[10] I.S. worked for the enterprise for approximately 1.5 years. Tr. 9/22/11, p. 14; Tr. 10/4/11, p. 13 (test. of Agent Roh).

| | |
|---|---|
| - Serious physical injury, 2H4.1(b)(1)(B) | +2[11] |
| - Held in peonage over 1 year, 2H4.1(b)(3)(A) | +3[12] |
| - Other felony offense - Extortion and Immigration Offenses - 2H4.1(b)(4)(A) | +2 |
| Role in the Offense - 3B1.1(a) (leader/organizer) | +3[13] |
| Obstruction of Justice, 3C1.1 (false testimony) | +0 |
| **Adjusted Offense Level** | **32** |

Group Six - Victim Yuri Vlad (Count One)

| | |
|---|---|
| Base Offense Level, 2H4.1 | 22 |
| Spec. Offense Charac - | |
| - Serious physical injury, 2H4.1(b)(1)(B) | +2[14] |
| - Held in peonage over 1 year, 2H4.1(b)(3)(A) | +3[15] |
| - Other felony offense - Extortion and Immigration Offenses - 2H4.1(b)(4)(A) | +2 |
| Role in the Offense - 3B1.1(a) (leader/organizer) | +3[16] |
| Obstruction of Justice, 3C1.1 (false testimony) | +0 |
| **Adjusted Offense Level** | **32** |

---

[11] Mykhailo Sheshur testified that after his sisters fled the Botsvynyuks in 2002, Omelyan and Stepan Botsvynyuk beat him over a period of hours to get him divulge the whereabouts of his sisters. Tr. 9/22/11, pp. 108-11. Yuri Vlad testified that the Botsyvnyuks took Sheshur for three days, and when Sheshur returned he was obviously hurt, his entire body was black and blue, that it appeared so awful that Vlad cried when he saw the damage to Sheshur's body. Tr. 9/26/11, pp. 56-58.

[12] See testimony of ICE Agent Roger Roh establishing Sheshur released from immigration detention in April 2001. Tr. 10/4/11, p. 14. Sheshur testified he escaped in November 2002 (approx. 1 year and 7 months). Tr. 9/22/11, p. 108.

[13] This worker was on Stepan Botsvynyuk's work crew. Tr. 9/22/11, p. 93.

[14] Vlad testified that Stepan Botsvynyuk tied a belt around Vlad's neck and squeezed until Vlad almost passed out. It was not until another person intervened that Stepan released the pressure. Tr. 9/26/11, p. 59. Stepan beat him another by shoving him into the basement and kicking him repeatedly. Tr. 9/26/11, p. 61.

[15] Vlad worked approximately 2.5 years. Tr. 9/26/11, p. 62.

[16] This worker was on Stepan Botsvynyuk's work crew. Tr. 9/26/11, p. 49.

Group Seven - Victim Oksana Haramita

| | |
|---|---:|
| Base Offense Level, 2H4.1 | 22 |
| Spec. Offense Charac - | |
| - Serious physical injury, 2H4.1(b)(1)(B) | +0[17] |
| - Held in peonage 180 days - 1 year, 2H4.1(b)(3)(B) | +2[18] |
| - Other felony offense - Extortion and Immigration Offenses - 2H4.1(b)(4)(A) | +2[19] |
| Role in the Offense - 3B1.1(a) (leader/organizer) | +0 |
| Obstruction of Justice, 3C1.1 (false testimony) | +0 |
| **Adjusted Offense Level** | **26** |

Group Eight - Victim Yuri Shpanyuk[20]

| | |
|---|---:|
| Base Offense Level, 2H4.1 | 22 |
| Spec. Offense Charac - | |
| - Serious physical injury, 2H4.1(b)(1)(B) | +0 |
| - Held in peonage over 1 yr, 2H4.1(b)(3)(A) | +3[21] |
| - Other felony offense - Extortion and Immigration Offenses - 2H4.1(b)(4)(A) | +2 |
| Role in the Offense - 3B1.1(a) (leader/organizer) | +0 |
| Obstruction of Justice, 3C1.1 (false testimony) | +0 |
| **Adjusted Offense Level** | **27** |

---

[17] The probation office added two levels for serious bodily injury. However, Haramita's trial testimony established that Omelyan Botsvynyuk struck her across the face only once. Tr. 10/4/11, p. 60.

[18] The probation office added 3 levels for being held in peonage for more than one year. Haramita testified, however, that she worked for 10-11 months before escaping. Tr. 10/4/11, p. 40.

[19] See also testimony of Olga Garamita, Oksana's mother. Tr. 10/4/11, p. 88-89.

[20] The probation office did not calculate the guidelines for Yuri Shpanyuk.

[21] Shpanyuk worked for approximately 2.5 years. Tr. 9/26/11, pp. 9, 17-18.

Group Nine - Victim Vasyl Mometko[22]

| | |
|---|---:|
| Base Offense Level, 2H4.1 | 22 |
| Spec. Offense Charac - | |
| - Serious physical injury, 2H4.1(b)(1)(B) | +0 |
| - Held in peonage 30 days - 180 days, 2H4.1(b)(3)(C) | +1[23] |
| - Other felony offense - Extortion and Immigration Offenses - 2H4.1(b)(4)(A) | +2[24] |
| Role in the Offense - 3B1.1(a) (leader/organizer) | +3[25] |
| Obstruction of Justice, 3C1.1 (false testimony) | +0 |
| **Adjusted Offense Level** | **28** |

Multiple Count Adjustments, USSG 3D1.4

| | | |
|---|---|---|
| Group 1 | 26 | 1/2 units |
| Group 2 | 29 | 1 unit |
| Group 3 | 29 | 1 unit |
| Group 4 | 29 | 1 unit |
| Group 5 | 32 | 1 unit |
| Group 6 | 32 | 1 unit |
| Group 7 | 26 | 1/2 units |
| Group 8 | 27 | 1/2 units |
| Group 9 | 28 | 1 units |
| **Total Units** | | **7  1/2 units** |

Pursuant to U.S.S.G. § 3D1.4, App. Note 2 "Background," the maximum increase

---

[22] Although Stepan Botsvynyuk was acquitted of committing extortion against Mometko in Count Four, Mometko is still a victim of conspiracy to hold in involuntary servitude and peonage under Count One.

[23] Mometko was released from immigration detention in May 2001.  See Roh testimony, Tr. 10/4/11.  Mometko testified that he worked approximately two months before escaping.  Tr. 9/20/11, p. 23.

[24] Although Stepan Botsvynyuk was acquitted of substantive extortion against Mometko, as charged in Count Four of the indictment, for purposes of the RICO conspiracy the defendants used extortion to further the peonage and involuntary servitude against all of the victims.  There is certainly evidence by a preponderance that Mometko was brought from Ukraine and made to work under the same conditions as every other victim, even if he was one of the first to escape after two months, and was therefore, a victim of the charged conspiracy of the enterprise.

[25] This worker was on Stepan Botsvynyuk's work crew.  Tr. 9/20/11, p. 8.

provided by the guidelines is 5 units.  Thus, only 5 levels may be added to the highest adjusted offense level, which is 32:

**Combined Adjusted Offense Level:                         32+5=37**

Because Stepan Botsvynyuk appears to have no known criminal history, he is in CHC I.

**CHC I, Level 37 suggests 210-262 months imprisonment.**

IV.     SPECIFIC OBJECTIONS TO PSR

The government has indicated with footnotes where its calculation of the guidelines differ with those of the probation office.  As stated above, the probation office used the correct methodology in calculating the guidelines.  Where the government generally differs is the factoring in of the time held in servitude and whether serious injury resulted, all based on trial testimony.  The objections are as follows:

1)      ¶80 - Petrunyk did not suffer serious bodily injury to warrant 2-level enhancement under 2H4.1(b)(1)(B).

2)      ¶81 - Petrunyk was held in peonage for a period between 180 days to 1 year, not over one year, and only 2-levels warranted under 2H4.1(b)(3)(B).

3)      ¶87 - Vasyl Mometko did not suffer serious bodily injury to warrant 2-level enhancement under 2H4.1(b)(1)(B).

4)      ¶114 - Haramita did not suffer serious bodily injury to warrant 2-level enhancement under 2H4.1(b)(1)(B).

5)      ¶115 - Haramita was held in peonage for a period between 180 days to 1 year, not over one year, and only 2-levels warranted under 2H4.1(b)(3)(B).

6)      The government also submits that additional victims should have been included in the PSR calculation, specifically: Mykhaylo Tomiyuk, I.S., and Yuri Shpanyuk.  These victims

testified at trial and were included in the government's calculation above.

                                          Respectfully submitted,

                                          ZANE DAVID MEMEGER
                                          United States Attorney

                                          /s/ Daniel A. Vélez
                                          DANIEL A. VELEZ
                                          Assistant United States Attorney

CERTIFICATE OF SERVICE

I certify that on this day I caused a copy of the Government's Objections to PSR to be served by electronic filing (ECF) and electronic mail upon:

<u>Counsel for Omelyan Botsvynyuk</u>
Hope C. Lefeber, Esq.
2 Penn Center
1500 JFK Blvd.
Suite 1205
Philadelphia, PA 19102
Tel: 610-668-7927
Fax: 610-668-7929
Hopelefeber@comcast.net

<u>Counsel for Stepan Botsvynyuk</u>
Jeremy H.G. Ibrahim, Esq.
Law Offices of Jeremy H. Gonzalez Ibrahim
P.O. Box 1025
Chadds Ford, Pa 19317
Tel: 215-568-1943
Fax: 610-456-2727
Jeremyibrahim.esq@verizon.net


/s/ Daniel A. Vélez
DANIEL A. VELEZ
Assistant United States Attorney

Dated:   June 1, 2012